UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     -against-<br><br>EMMANUEL TAVAREZ,<br><br>                         Defendant, | **MEMORANDUM AND ORDER**<br>Case No. 08-CR-242 |

*Appearances:*
*For the Government:*
BREON PEACE
ALEXANDER A. SOLOMON
U.S. Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

*For the Defendant:*
ALLEGRA W. GLASHAUSSER
Federal Defenders of New York
One Pierrepont Plaza, 16th Floor
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

Pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), Emmanuel

Tavarez ("Tavarez") moves to reduce his sentence to time served. For the

following reasons, the Court reduces Tavarez's 300-month sentence to 220 months.

## BACKGROUND

Prior to his current incarceration, Tavarez, a former New York City Police

Department ("NYPD") officer, had served as a lookout for a robbery crew that

targeted narcotics dealers and traffickers by posing as law enforcement officers,

and using false badges and warrants to seize money and drugs from its victims.

1

Tavarez provided NYPD equipment to his co-conspirators and, on one occasion, entered a victim's home, brandishing a firearm. In 2011, he pleaded guilty to a three-count superseding indictment charging him with conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a); conspiracy to distribute heroin, cocaine, MDMA, and marijuana in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(i), 841(b)(1)(A)(ii), (b)(1)(c), and (b)(1)(D); and use of a firearm in furtherance of robbery or drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A). On May 9, 2012, Judge Sandra Townes sentenced Tavarez to imprisonment of 300 months (25 years), comprising concurrent sentences of 216 months for the first two counts, and a consecutive sentence of 84 months for the third count.

## DISCUSSION

The First Step Act allows a federal court to modify a defendant's sentence upon a defendant's motion. *See United States v. Halvon*, 26 F.4th 566, 568 (2d Cir. 2022) (per curiam). Before the Court may grant such relief, it must first determine that three independent, necessary requirements have been satisfied: (1) the defendant has exhausted administrative remedies; (2) an extraordinary and compelling reason exists for sentence reduction; and (3) the § 3553(a) factors warrant reduction. *See United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021).

## A. Administrative Exhaustion

Tavarez previously submitted a request for compassionate release to a Bureau of Prisons ("BOP") warden, who denied the request. The Government contends that Tavarez has not administratively exhausted his claim, both because he has not administratively appealed this warden's denial and because his initial request raised only one issue—his status as the only available caregiver to his mother—and did not mention the others he now raises in this petition.

The Second Circuit has explained that the administrative exhaustion requirement of § 3582(c)(1)(A) is a "claim-processing rule," not a "jurisdictional limitation," and thus may be waived. *United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021); *see also United States v. Salemo*, No. 11-CR-65, 2021 WL 4060354, at *2 (S.D.N.Y. Sept. 7, 2021) (noting the exhaustion requirement is "subject to judicial waiver"). Accordingly, district courts in this circuit have waived the exhaustion requirement where it would be futile or prejudicial. *See United States v. Johnson*, 671 F. Supp. 3d 265, 271 (E.D.N.Y. 2023) (collecting cases).

Even if Tavarez's prior attempt to exhaust his administrative burden was arguably inadequate, this Court agrees with Tavarez that there is good reason to waive the exhaustion requirement. As Tavarez observes, from 2020 through June 2024, the BOP Director has initiated only one successful motion for compassionate

release on behalf of a defendant in the Second Circuit, even as 480 defendants have successfully brought their *own* compassionate release motions.[1] *See* U.S. SENTENCING COMMISSION, COMPASSIONATE RELEASE DATA REPORTS, at Table 5, https://www.ussc.gov/research/data-reports/compassionate-release-data-reports. This Court agrees that given the BOP's apparent unwillingness to pursue compassionate release requests, requiring Tavarez—having already received a denial from the warden—to now file an appeal before bringing this petition would be an exercise in futility. *See Johnson*, 671 F. Supp. 3d at 276 ("The BOP has simply declined to pursue compassionate release requests, regardless of how urgent or meritorious they are. Any bid [defendant] might bring for the BOP to bring such a motion on his behalf would thus almost certainly be in vain.").

The Second Circuit has not addressed whether a defendant must exhaust BOP procedure with respect to each issue raised, but district courts in this circuit have declined to "inscribe" an "issue-exhaustion" requirement in the absence of statutory text in § 3582(c)(1)(A). *See Salemo*, 2021 WL 4060354, at *3; *United States v. Torres*, 464 F. Supp. 3d 651, 657 (S.D.N.Y. 2020) (finding that imposing a judicially created issue-exhaustion requirement would be "inappropriate" and

---

[1] To be clear, from 2019 through early 2023, approximately 30,000 people nationally had been released from federal prison before their original release date under all the provisions of First Step Act, which included a variety of different measures enabling a person to obtain an early release. *See* Judge Frederic Block, *A Second Chance: A Federal Judge Decides Who Deserves It* 174 (2024).

4

noting that "[t]his conclusion is consistent with the majority of district court decisions that have addressed this question"). This Court too will not impose an issue-exhaustion requirement as grounds to refuse to consider Tavarez's petition.

## B. Extraordinary and Compelling Reasons

The Court has broad discretion to consider the full slate of potential extraordinary or compelling reasons that might support a motion for compassionate release. *See United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020). In its current guidelines, the U.S. Sentencing Commission has identified several categories of extraordinary and compelling reasons—such as medical circumstances, age, family circumstances, or abuse—that may warrant a sentence reduction, in addition to providing a catchall provision for "any other circumstance or *combination of circumstances*, that, when considered by themselves or together" with other identified factors are similar in gravity. *See* U.S.S.G. § 1B1.13 (b)(1)–(5) (emphasis added).

Thus, this Court's broad discretion encompasses the evaluation of a "combination" of circumstances which, though any individual one may not itself be extraordinary, may conjointly add up to an extraordinary and compelling reason to reduce a defendant's sentence.[2] *See United States v. Snype*, 683 F. Supp. 3d 351,

---

[2] Other circuits have come to a similar understanding. *See United States v. Trenkler*, 47 F.4th 42, 49 (1st Cir. 2022) (observing that when evaluating a compassionate release motion "the whole may be greater than the sum of its parts, and reasons that might not do the trick on their own may

364 (S.D.N.Y. 2023) (finding that even where "none of the circumstances . . . would alone permit a sentence reduction," a consideration of the "confluence of all of these circumstances" amounts to a showing of extraordinary and compelling reasons); *United States v. Russo*, 643 F. Supp. 3d 325, 332, 333, 336 (E.D.N.Y. 2022) (finding a "combination" of factors, including medical circumstance and rehabilitation, may add up to sufficiently compelling reason for sentence reduction); *United States v. Qadar*, No. 00-CR-603, 2021 WL 3087956, at *11 (E.D.N.Y. July 22, 2021) (finding a "confluence of factors" may combine to create an extraordinary and compelling reason to reduce a sentence); *United States v. Phillips*, 469 F. Supp. 3d 180, 184–85 (S.D.N.Y. 2020) (finding "totality of the circumstances," including defendant's medical condition and rehabilitation, warrant sentence reduction).

Tavarez identifies several circumstances that he posits are extraordinary and compelling. He contends that his health—he has chronic kidney disease and is at risk of a more severe diagnosis—is one such circumstance. He also contends that he is the only available caregiver to his ailing mother, who has lung cancer and requires assistance caring for herself. Additionally, he argues that the exceedingly

---

combine to constitute circumstances that warrant a finding that the reasons proposed are, in the aggregate, extraordinary and compelling"). *But see United States v. Lemons*, 15 F.4th 747, 749 (6th Cir. 2021) (observing that a "combination of grounds for release, none of which independently supports a sentence reduction, does not collectively entitle a defendant to a sentence reduction" (cleaned up)).

harsh conditions of incarceration resulting from the COVID-19 pandemic are extraordinary and compelling circumstances and have made his sentence more punitive than was anticipated at his sentencing.

Tavarez also asks this Court to consider that the preceding circumstances, when combined with his record of rehabilitation, warrant compassionate release. The Court reviews each of these circumstances in turn.

*Medical Condition*

Tavarez has chronic kidney disease and has suffered from a number of kidney-related problems. Evaluations of Tavarez by the BOP Health Services noted that he could be at risk of end-stage renal disease, a condition requiring dialysis or a kidney transplant. At present, the BOP appears to be adequately managing Tavarez's condition. For the time being, end-stage renal disease and similar conditions are risks, not current afflictions. Tavarez is receiving medication to manage his kidney disease and has apparently responded positively to treatment for other ailments, such as a rash, thought to be related to that disease. *See* Tavarez Mot. For Sentence Reduction, at Ex. F.

Courts in this circuit can and do account for conditions such as chronic kidney disease and other ailments in considering whether multiple factors might combine to justify a reduced sentence. *See United States v. Howell*, No. 17-CR-151, 2023 WL 118780, at *3 (D. Conn. Jan. 6, 2023) (finding "progressing"

7

chronic kidney disease to support compassionate release when combined with other considerations); *United States v. Campbell*, No. 09-CR-119-24, 2023 WL 7013388, at *4 (E.D.N.Y. Oct. 25, 2023) (finding defendant's conditions, including chronic kidney problems and renal failure, support sentence reduction); *United States v. Salemo*, No. 11-CR-65, 2021 WL 4060354, at *4–5 (S.D.N.Y. Sept. 7, 2021) (finding defendant's "age and growing list of medical problems . . . relevant to the Court's discretionary assessment").

It may be that Tavarez's current diagnosis does not, by itself, constitute an extraordinary or compelling reason for a reduced sentence. *See, e.g.*, *United States v. Castellanos*, No. 13-CR-40-1, 2023 WL 5333198, at *3–4 (S.D.N.Y. Aug. 18, 2023) (finding that chronic kidney disease that is receiving treatment and not particularly severe or advanced is not an extraordinary or compelling circumstance). Nevertheless, this condition, and the risk of future deterioration, should carry weight when considered in tandem with other circumstances, analyzed in detail below, that could support a sentence reduction. *See United States v. Snype*, 683 F. Supp. 3d 351, 363 (S.D.N.Y. 2023) (finding defendant's medical situation not "serious" enough to be extraordinary and compelling, but nevertheless "a factor to consider" in granting sentence reduction); *United States v. Freeman*, No. 96-CR-527, 2023 WL 6517466, at *5 (E.D.N.Y. Oct. 5, 2023) (citing *Russo*, 643 F. Supp. 3d at 333) (finding health issue to be "one of the several factors

contributing" to finding of grounds for sentence reduction). The Court accordingly takes into account Tavarez's medical condition in weighing whether a combination of factors may combine to warrant a reduced sentence.

*Family Circumstances*

In addition to a serious medical condition, the 2023 amendments to the BOP sentencing guidelines provide that family circumstances, including the "incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" may constitute an extraordinary and compelling reason for release. U.S.S.G. § 1B1.13 (b)(3)(C).

Tavarez's 72-year-old mother is in poor health and has lung cancer, emphysema, and other serious medical conditions, and requires help attending appointments with doctors and climbing the stairs to her third-floor apartment. Most of Tavarez's siblings live out-of-state and so cannot provide her day-to-day assistance, though she receives assistance from home health aides a few days per week. Tavarez also has two siblings that live closer to his mother. One New York-based sibling has mental health issues and is largely homebound, living with his father. Another lives in New Jersey, and though she provides some assistance, her own job and other family obligations limit her availability. Tavarez, who now works in a BOP medical facility caring for sick patients, seeks a sentence reduction in part because, he explains, he is well-poised to care for his mother in light of his

9

training and potential availability. Thus, he contends that his mother's incapacity and his status as the only available caregiver constitutes an extraordinary and compelling reason for his release.

District courts in this circuit "generally require the defendant to 'provide several sources of evidence' that the defendant is, in fact, the only available caregiver." *United States v. Donato*, No. 95-CR-223, 2024 WL 1513646, at *9 (E.D.N.Y. Apr. 8, 2024) (quoting *United States v. Sharma*, No. 19-CR-24, 2023 WL 4305054, at *3 (E.D.N.Y. June 30, 2023)); *see also United States v. Lindsey*, No. 13-CR-271, 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) ("[C]ourts generally require a showing of '"evidence from several sources" indicating that the defendant "is the only available caregiver" for a family member in "dire conditions,"' before concluding that 'an extraordinary and compelling reason has been established.'" (quoting *United States v. Ayala*, No. 16-CR-809, 2020 WL 6626015, at *1 (S.D.N.Y. Nov. 12, 2020))).

Tavarez has supplied thorough, verifiable documentation of his mother's current medical conditions. *See* Tavarez Mot. For Sentence Reduction, at Ex. E. Tavarez has supplied thinner information to explain why he is his mother's only available caregiver. He asserts that his mother's seven other children either live too far away or are otherwise too busy to provide required care. He has provided ten letters from siblings, cousins, and other friends and relatives. *See* Tavarez Mot. For

10

Sentence Reduction, at Ex. B. These letters eloquently address his efforts at rehabilitation and desire to care for his mother.

It may be, as the Government contends, that Tavarez has not provided adequate evidence demonstrating that he is the "only available" caregiver for his mother. If so, Tavarez's family circumstances would be unlikely in themselves to constitute extraordinary or compelling reasons for a sentence reduction. *See White v. United States*, No. 13-CR-2555, 2022 WL 4244219, at *4 (W.D.N.Y. Sept. 15, 2022) (finding defendant established that he was the "preferred caregiver" of his family members, "but their preference . . . does not amount to an extraordinary and compelling reason for a sentence reduction").

However, as with Tavarez's medical condition, this Court may consider his family circumstances in conjunction with other factors in evaluating his petition for a reduced sentence. *See United States v. Hasanoff*, No. 10-CR-162, 2020 WL 6285308, at *5 (S.D.N.Y. Oct. 27, 2020) (considering family circumstances in "combination" with rehabilitation in granting reduced sentence); *United States v. Stokes*, No. 19-CR-307, 2024 WL 216643 at *2–3 (D. Conn. Jan. 19, 2024) (considering defendant's mother's need for assistance in granting reduced sentence where defendant's siblings' capacity to help was limited by work and familial obligations). Tavarez has lucidly explained his anticipated role as a caregiver to his mother, and has amply demonstrated his suitability in this respect through his

commendable work in BOP medical facilities. Thus, Tavarez's family circumstances are another factor to be considered in evaluating his petition for a reduced sentence, even if they may not rise to a level that would warrant an early release on their own.

*Conditions of Incarceration During COVID-19*

Tavarez also contends that the harsh conditions of incarceration created by COVID-19 are extraordinary and compelling circumstances weighing in favor of release. The Government acknowledges, as does this Court, that conditions of confinement during the pandemic have been difficult. Such conditions may have the effect of increasing the severity of a defendant's sentence beyond that which was originally intended, and so support a motion for a reduction. *See Johnson*, 671 F. Supp. 3d at 281 (collecting cases in which courts granted compassionate release where individuals "demonstrated that their imposed sentence was more severe than originally intended, due to the pandemic"). While such conditions of incarceration may not themselves justify a sentence reduction, *see, e.g.*, *United States v. Gonzalez*, No. 19-CR-467, 2022 WL 16919842, at *5 (S.D.N.Y. Apr. 19, 2021) (finding that the difficult conditions of imprisonment occasioned by the COVID-19 pandemic alone are not sufficiently "extraordinary and compelling" to warrant compassionate release), this Court takes these conditions into account, in

conjunction with Tavarez's medical condition, family circumstances, and rehabilitation.

*Rehabilitation and Other Factors*

Tavarez lastly highlights his relative youth at the time of his offense and subsequent rehabilitation as a factor weighing in favor of compassionate release, when considered in combination with the circumstances discussed above. He has provided tutoring to other incarcerated people and translated religious services into Spanish. In his current role at a BOP medical facility, he feeds, bathes, and changes the diapers of other incarcerated people. Tavarez's rehabilitative efforts are laudable, and recognized with praise from BOP staff with whom he has worked in psychology and medical units while incarcerated. For instance, a BOP psychologist for whom he has worked as an orderly praised his hardworking and respectful work ethic and described him as "going above and beyond" the tasks required of him. *See* Tavarez Mot. For Sentence Reduction, at Ex. C. Four BOP officials who supervised Tavarez's work as an orderly each spoke with praise of his dependability and eagerness to help. *Id.*

The Second Circuit has explained that the "only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Brooker*, 976 F.3d at 237–38 (quoting 28 U.S.C. § 994(t)). The Government, for its part,

13

does not dispute Tavarez's impressive effort at rehabilitation, but contends only that, though commendable, it cannot by itself justify a sentence reduction. However, while rehabilitation "alone" is not to be considered extraordinary and compelling, it "may be considered in combination with other circumstances in determining whether and to what extend a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13 (d). Indeed, the First Step Act "provides a powerful incentive for good behavior during long terms of incarceration, making clear that meaningful rehabilitation is a prisoner's best chance at obtaining a second chance at living a law-abiding life." *Russo*, 643 F. Supp. 3d at 339.

District courts in this circuit have correspondingly exercised their broad, sound discretion to find that a defendant's strong record of rehabilitation while incarcerated may congeal with other factors to generate an extraordinary and compelling circumstance, even where none of these alone would necessarily justify a reduced sentence. *See Phillips*, 469 F. Supp. 3d at 184–85 (finding the combination of defendant's medical condition, COVID-19-related health risks, and "thorough rehabilitation" warrant sentence reduction); *Russo*, 643 F. Supp. 3d at 333 (finding that "considered together" factors including defendant's health, the harshness of pandemic-related conditions of incarceration, and rehabilitation rise to the level of extraordinary and compelling); *United States v. Khan*, No. 18-CR-830,

14

2023 WL 2911021, at *4 (S.D.N.Y. Apr. 11, 2023) (finding combination of defendant's medical condition, potential as a family caregiver, and rehabilitation to warrant sentence reduction); *United States v. Amerson*, No. 00-CR-157, 2023 WL 4497767, at *8 (E.D.N.Y. July 12, 2023) (finding combination of defendant's medical condition, rehabilitation, length of sentence, and the harshness of incarceration during the pandemic to warrant sentence reduction); *United States v. Freeman*, No. 96-CR-527, 2023 WL 6517466, at *6 (E.D.N.Y. Oct. 5, 2023) (finding combination of defendant's medical condition, sentencing disparity as compared to co-defendants, and rehabilitation to warrant sentence reduction); *United States v. Donato*, Nos. 03-CR-929, 05-CR-060, 2024 WL 665939, at *8 (E.D.N.Y. Feb. 16, 2024) (finding combination of defendant's family circumstances, pandemic-related conditions of incarceration, and rehabilitation to warrant sentence reduction); *United States v. Vasquez*, No. 96-CR-1044, 2024 WL 2385264, at *6 (E.D.N.Y. May 23, 2024) (finding combination of defendant's rehabilitation, stacked sentence, and sentencing disparity as compared to co-defendants to warrant sentence reduction). As this selection of the ample precedent from courts in this circuit indicates, a defendant may ground a motion for a sentence reduction on "rehabilitation-plus." That is, a court may find that a defendant's sterling rehabilitative work, when added to a consideration of other

15

factors amounts to an extraordinary and compelling rationale for a reduced sentence. This Court finds that to be the case here.

In sum, Tavarez has presented a confluence of circumstances that, when considered jointly, add up to more than the sum of their parts and warrant a reduced sentence. Tavarez is afflicted by a serious, and potentially worsening, medical condition. Though he may not be the only possible caregiver for his mother, his family circumstances are such that his help, which he is well-positioned to provide given his work as an orderly while incarcerated, could be critical to her well-being. He has made impressive efforts at rehabilitation, and multiple supervisors of his work as an orderly praise his work ethic, trustworthiness, dependability, and conscientiousness. Taking into account all the factors recounted above, this Court finds they combine to constitute an extraordinary and compelling reason for a reduction of his sentence.

## C. 3553(a) Factors

To grant a sentence reduction, this Court must not only identify an extraordinary and compelling reason for a reduction but find such a reduction warranted by the factors set forth in 18 U.S.C. § 3553(a). *See Keitt*, 21 F.4th at 69. Those factors include (i) the nature and circumstances of the offense, (ii) the history and characteristics of the defendant, (iii) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just

16

punishment, (iv) the need to adequately deter criminal conduct, (v) the need to protect the public from the defendant, (vi) the need to provide the defendant with necessary rehabilitation, and (vii) the need to avoid unwarranted sentencing disparities among similar defendants.

The Government contends that consideration of these factors militates against a sentence reduction because such a reduction would fail to promote proper respect for the law and undermine the aims of providing adequate deterrence to potential offenders. The Government emphasizes Tavarez's betrayal of the public trust that was placed in him as an NYPD officer, a position he used to advance the wide-ranging conspiracy in which he pled guilty of participating. Tavarez acknowledges the seriousness of his crimes and agrees with the Government that a serious sentence is in order. Tavarez, however, contends that the more than 14 years he has so far served already constitutes a serious and just sentence that would properly advance the considerations articulated in § 3553(a).

Tavarez's crime was no doubt serious. As Judge Townes observed at his sentencing, he betrayed his oath as a police officer by supplying co-conspirators with his police shield, handcuffs, and NYPD raid jackets; he served as a lookout during robberies, usually armed; and on one occasion entered a victim's home during a robbery when children were present. *See* Sentencing Transcript, at 25:1-9,

ECF No. 675. The factors identified by § 3553(a) in turn require the seriousness of these offenses to be considered alongside Tavarez's history and characteristics.

Tavarez was 21 years old when he first participated in these offenses alongside older relatives. He was 33 at the time of his sentencing and is now middle-aged. He has not gotten into trouble during his incarceration. His several letters of recommendation from supervisors speak to his impressive efforts at rehabilitation and work in prison psychology and medical units. The BOP assesses him to be at minimal risk of future criminal activity. His history and characteristics—his relative youth at the time he began participation in the conspiracy and the subsequent substantial steps he has taken toward rehabilitation while incarcerated—tilt the balance of § 3553(a) factors in favor of a reduction. *See Russo*, 653 F. Supp. 3d at 338 (evaluating § 3553(a) factors and finding defendant's young age and rehabilitation weigh in favor of reduction); *see also United States v. Piggott*, No. 94-CR-417, 2022 WL 118632, at *3 (S.D.N.Y. Jan. 12, 2020) ("It is also well-established that recidivism decreases significantly with age.").

Still, the gravity of Tavarez's offenses should not be understated. Judge Townes rightfully stressed the profound betrayal of public trust Tavarez committed in using his position as an NYPD officer in support of a significant string of drug robberies and cannot be criticized for lawfully imposing the original sentence.

18

However, the principal thrust of the compassionate release aspect of the First Step Act is to afford those, such as Taveras, a second chance to lead a law-abiding life where warranted.

Accordingly, the court will reduce Tavarez's sentence to 220 months.


**SO ORDERED.**



  /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 4, 2024

19